[No. D020704. Fourth Dist., Div. One. June 27, 1994.]

LAURIE S., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Real
Party in Interest.

**COUNSEL**

Teresa Burrell for Petitioner.

No appearance for Respondent.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, Gary C. Seiser and Patrice Plattner-Grainger, Deputy County Counsel, for Real Party in Interest.

Michael J. Wagner for Minor.

OPINION

BENKE, Acting P. J.—Laurie S. petitions for a writ of mandate after the court ordered her to submit to a psychological evaluation before the jurisdictional hearing in this dependency proceeding concerning her infant daughter Ciebrianna G. Laurie contends the court lacks authority to order her to undergo a psychological evaluation before a finding of jurisdiction and the order violates her privacy and due process rights. Laurie also objects to the court's ruling her psychological evaluations from earlier dependency proceedings may be admitted in evidence at this jurisdictional hearing. We conclude the court may not order a parent to submit to a psychological evaluation for discovery purposes before his or her child is adjudged a dependent under Welfare and Institutions Code[1] section 300, and grant that portion of the petition. Laurie's claim of error as to the admissibility of evidence is not reviewable on a petition for writ of mandate and we deny that portion of the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Ciebrianna was born on September 15, 1993. On January 10, 1994, San Diego County Department of Social Services (Department) petitioned to declare Ciebrianna a dependent under section 300, subdivision (a),[2] alleging she was at substantial risk of serious physical harm because Laurie's son, Spenser T., was declared a dependent in 1988 after she burned him with a curling iron and Laurie failed to reunify with him. Specifically, the Department alleged Laurie "currently becomes easily frustrated at the minor Ciebrianna, yells obscenities at the minor, and [Laurie] believes that the minor should understand that [Laurie] needs her sleep and shouldn't be awakened in the middle of the night by the minor's crying." Under section 300, subdivision (b),[3] the Department also alleged Laurie was unable to care for Ciebrianna due to mental illness, as shown by yelling obscenities at Ciebrianna and "exhibiting little bonding with [her], and having a history of

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Section 300, subdivision (a) provides: "The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm inflicted nonaccidentally upon the minor by the minor's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions [sic] of injuries on the minor or the minor's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. . . ."

[3] Section 300, subdivision (b) provides: "The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor, . . . or by the willful or negligent failure of the parent or guardian to provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to

mental emotional difficulties including previous diagnoses of Atypical Psychosis with Paranoid Features . . . ."

The Department submitted a "Screening Summary" for the January 11 detention hearing, stating Laurie had been living with Ciebrianna in a community shelter where other residents and employees heard Laurie shouting at the baby. Laurie's caseworker told the social worker that Laurie was frustrated and not doing well in the shelter. Unnamed persons were concerned Laurie was not bonded with Ciebrianna and might not be providing her adequate nourishment. Laurie admitted to the social worker she was "stressed out" and three of her children were taken away from her because she used amphetamines. She claimed to have been drug-free for three years and that she last took antipsychotic medication in 1992. The social worker said Laurie's therapist prescribed antipsychotic medication on January 7, 1994, which Laurie characterized as medication to reduce her stress and anger levels. Attached to the screening summary were copies of three psychological evaluations conducted of Laurie in 1988, 1989 and 1990, describing Laurie as then lacking "capacity, insight, judgment or emotional stability to effectively and safely parent an infant child" and having "psychotic thought processes[,] . . . a significant number of both emotional and cognitive deficits[,] . . . borderline intelligence . . . [and] clear signs of a mental disorder."

Laurie appeared at the detention hearing. The court found the Department made a prima facie showing Ciebrianna came within section 300, subdivisions (a) and (b). Finding Ciebrianna would be in substantial danger unless she were removed from Laurie's physical custody, the court detained Ciebrianna in foster care. The court granted Laurie supervised visitation and authorized funds for drug testing and therapy.

At a readiness hearing on January 24, the social worker reported Ciebrianna had been hospitalized for six days with bronchitis. Laurie's case worker related Laurie had been "causing chaos in the milieu setting and not responding to her treatment goals." The social worker contacted Laurie's psychiatrist, who prescribed antipsychotic medication and monitored Laurie on a monthly basis.

On March 1, the court conducted a hearing on Laurie's motion to preclude the Department from using the previous psychological examinations in this proceeding. Laurie argued the evaluations were protected by the psychotherapist-patient privilege and were irrelevant to her present conduct. The

provide regular care for the minor due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ."

Department responded Laurie had waived any privilege because the evaluations were admitted in the earlier proceedings. The Department requested Laurie be ordered to undergo a new psychological evaluation if the three previous evaluations were inadmissible.[4] The court found the previous evaluations were privileged but Laurie had waived her privilege in the earlier proceedings. Alternatively, the court found the state's interest in obtaining information to properly protect a minor outweighed a parent's privilege. The court authorized funds for a current psychological evaluation and ordered Laurie to cooperate. The court temporarily stayed its order to allow review by this court. We issued an order to show cause, calendared argument, stayed use of the newly ordered psychological evaluation and directed the jurisdictional hearing to go forward.

## DISCUSSION

The parties inform us the court made a true finding under section 300, subdivisions (a) and (b), and declared Ciebrianna a dependent on April 29, 1994, without evidence from a current psychological evaluation. ▮ Ordinarily a petition for writ of mandate will be denied when it is rendered moot after filing. However if the case remains pending and poses an issue of broad public interest that is likely to recur, the court may exercise its inherent discretion to resolve that issue. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) Because psychological evaluations of parents are frequently used in dependency cases and we find no reported cases providing guidance for an order directing a parent to undergo this kind of evaluation, we explain the grounds which would support such an order.

### I.

Important personal liberty and state interests both complement and compete in dependency proceedings. In enacting dependency law, the Legislature expressed its intent "to provide maximum protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to protect children who are at risk of that harm." (§ 300, subd. (j).) That protection is necessarily prescribed by the long-established rights guaranteed parents and children under the United States Constitution, because the importance of the family is " 'essential,' [citation]" among the " 'basic civil rights of man' [citation]." and '[r]ights far more precious . . . than property rights.' [citation]" (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208].) ▮ The

---

[4]In response to Laurie's petition, the Department states a current psychological evaluation is "necessary to assist the court in determining the current risk of future injury that [Laurie] poses to Ciebrianna."

right to privacy and to be let alone by the government in "the private realm of family life" is among the basic values of ordered liberty. (*Prince* v. *Commonwealth of Massachusetts* (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 652, 64 S.Ct. 438].) In deference to the parent-child relationship, the Legislature directed child protection "shall focus on the preservation of the family whenever possible . . . [and is not] intended to disrupt the family unnecessarily or to intrude inappropriately into family life, to prohibit the use of reasonable methods of parental discipline, or to prescribe a particular method of parenting." (§ 300, subd. (j).)

Here, Laurie objects to the order requiring her to cooperate with a psychological evaluation before her daughter is adjudged a dependent, claiming the evaluation violates her privacy rights and its use for jurisdictional purposes deprives her of a fair trial. Laurie states the Department must prove the allegations in its petition based on her conduct, not on her mental state. She argues she may not be the subject of discovery by an expert because she has not asserted any claim or defense relating to her mental state.

The Department responds a parent is required to disclose material information in a dependency proceeding under California Rules of Court,[5] rule 1420(e),[6] and a court-ordered psychological examination is merely a means of acquiring that information as authorized by Evidence Code section 730.[7] Although the Department acknowledges a parent's right to assert the privilege against self-incrimination, it argues dependency proceedings are not criminal in nature and the "use immunity" afforded in section 355.1, subdivision (d),[8] provides adequate protection to the parent. The Department adds a parent has no expectation of privacy in a court-ordered evaluation and, in any event, the court has inherent authority to order a parent to submit to a psychological evaluation where the parent's mental state is in issue because

---

[5]All rule references are to the California Rules of Court.

[6]Rule 1420(e) provides: "Except as provided in subdivisions (g) [privilege or good cause not to disclose] and (h) [nondiscoverable material], the parent or guardian shall, upon timely request, disclose to petitioner material and information within the parent's or guardian's possession or control that is relevant. If the parent or guardian is represented by counsel, a disclosure request shall be made through counsel."

[7]Evidence Code section 730 provides in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. . . ."

[8]Section 355.1, subdivision (d) provides: "Testimony by a parent, guardian, or other person who has the care or custody of the minor made the subject of a proceeding under Section 300 shall not be admissible as evidence in any other action or proceeding."

the state's interest in detecting and preventing child abuse outweighs any invasion of the parent's privacy.

Our case survey reveals no scenario where a parent has challenged an order to undergo a psychological evaluation for jurisdictional purposes. Evaluations are generally ordered as part of a reunification plan after the child is declared a dependent. (See *In re Christina L.* (1992) 3 Cal.App.4th 404, 408 [4 Cal.Rptr.2d 680].) Frequently after a finding of jurisdiction a parent may be ordered to undergo an evaluation to determine if the parent is mentally disabled and if reunification services are likely to prevent continued abuse and neglect. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 560 [283 Cal.Rptr. 483].) Similarly, where the child is declared a dependent because of parental mental illness, the parent may subsequently be evaluated to determine if the parent is incapable of utilizing reunification services. (§ 361.5, subd. (b)(2); *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1076-1077 [261 Cal.Rptr. 903].) Institutionalized parents have been evaluated postjurisdiction to determine whether they are capable of raising their child. (See *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 216-217 [4 Cal.Rptr.2d 101].)

In some instances parents request expert evaluations before a finding of jurisdiction in order to prepare their defense. (See *Collins* v. *Superior Court* (1977) 74 Cal.App.3d 47, 50-51 [141 Cal.Rptr. 273] [appointment requested for medical expert on physical abuse].) A parent's treating physician may be a percipient witness to untoward conduct by the parent affecting the child, and that physician's testimony may be introduced at the jurisdictional hearing. (See *In re Corey A.* (1991) 227 Cal.App.3d 339, 342-344 [277 Cal.Rptr. 782].) A parent may also request a psychological evaluation of the relationship between parent and child at the selection and implementation stage, to show adoption is not in the child's best interests and parental ties should be preserved. (§ 366.26, subd. (c)(1)(A); *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1083-1084 [10 Cal.Rptr.2d 813].)

In *In re Basilio T.* (1992) 4 Cal.App.4th 155, 161 [5 Cal.Rptr.2d 450], although there is mention of the court authorizing funds for psychological evaluations at the detention hearing, it is unclear whether the evaluations were requested or conducted. Similarly in *In re Stephanie M.* (1994) 7 Cal.4th 295, 303 [27 Cal.Rptr.2d 595, 867 P.2d 706], psychological evaluations of the parents were attached to the Department's report at the jurisdictional hearing, but there is nothing in the opinion to suggest the reports were court ordered. The only reported case we find indicating the court ordered a parent to undergo a psychological evaluation at the detention stage is *In re Christina B.* (1993) 19 Cal.App.4th 1441, 1445 [23 Cal.Rptr.2d 918], where the mother apparently did not object to the order.

Here, the Department requested Laurie be evaluated by an expert witness under Evidence Code section 730 in order to obtain evidence to prove Ciebrianna is at risk of physical harm or neglect due to Laurie's mental illness. The psychological evaluation is an "information-gathering tool." (*In re Eduardo A.* (1989) 209 Cal.App.3d 1038, 1042 [261 Cal.Rptr. 68].) However expert witnesses are appointed only where "expert evidence is or may be required . . . ." (Evid. Code, § 730), and their testimony is limited to "a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ." (Evid. Code, § 801, subd. (a).) Because the matter to be determined at the jurisdictional hearing is whether a child is at substantial risk of harm at the hands of a parent, due to parental acts or inaction, if that assessment can be made within ordinary experience, no expert is necessary.[9]

In Laurie's case, her acts toward Ciebrianna can be assessed for risk without expert opinion. Screaming, swearing and demonstrating indifference toward an infant are acts which a layperson will understand as inconsistent with caregiving. While a psychologist or psychiatrist may have greater insight into Laurie's purported illness than a layperson, whether she is a danger to her child can be evaluated by the court without an expert. This is unlike the situation where a child exhibits physical injuries or a failure to thrive and an expert medical opinion is needed to determine if the injuries were accidental or intentionally inflicted, or the child is malnourished as a result of starvation or organic problems.

Moreover the Department can gain information on the parent-child situation from sources other than a psychological evaluation. (See *In re Eduardo A., supra,* 209 Cal.App.3d at p. 1043.) Although the rules of court encourage informal and reciprocal discovery, the rules are "subject to the right of a party to show privilege or other good cause not to disclose specific material or information." (Rule 1420(a).) A person's right of privacy is accorded greater deference than a statutorily created privilege. We conclude the psychological examination ordered here is unwarranted and intrusive discovery.

At the prejurisdictional stage, an allegation by the Department that a parent is mentally ill or the fact of mental illness alone does not justify a psychological examination of that parent. By denying the allegations in the petition, the parent does not tender his or her mental state in issue. Only after a finding the child is at risk, and assumption of jurisdiction over the child, do

---

[9]In *In re Khalid H.* (1992) 6 Cal.App.4th 733 [8 Cal.Rptr.2d 414], this court expressly rejected mother's contention that evidence from expert witnesses was required to show she was mentally ill in order to declare her child a dependent under section 300, subdivision (b).

a parent's liberty and privacy interests yield to the demonstrated need of child protection. At that stage, where the aim is to reunify parent and child, expert opinion on the cause and extent of mental illness may be required to ascertain which services will eliminate the conditions leading to dependency.

## II.

Laurie also seeks a writ of mandate to vacate the pretrial ruling the Department may introduce her previous psychological evaluations in this dependency proceeding. ■ Neither a writ of prohibition nor a writ of mandate will lie to resolve an issue as to the admissibility of evidence. (*People* v. *Municipal Court* (*Ahnemann*) (1974) 12 Cal.3d 658 [117 Cal.Rptr. 20, 527 P.2d 372].) The erroneous exclusion or admission of evidence is reviewable on appeal from a judgment or decision and examined in a context whether the purported error resulted in a miscarriage of justice. (Evid. Code, §§ 353, 354; *In re Mark C.* (1992) 7 Cal.App.4th 433, 443-444 [8 Cal.Rptr.2d 856].)

### DISPOSITION

Let a writ of mandate issue directing the superior court to vacate that portion of its order requiring Laurie to submit to a prejurisdictional psychological examination. The stay issued on March 22, 1994, will vacate upon issuance of the remittitur.

Huffman, J., and Nares, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 29, 1994. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.