[No. B090963. Second Dist., Div. Six. Jan. 18, 1996.]

In re MATTHEW S. et al., Persons Coming Under the Juvenile Court Law.
SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
ALEXANDRA S., Defendant and Appellant.

**COUNSEL**

G. Jack Benge, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

James B. Lindholm, Jr., County Counsel, and Patricia A. Stevens, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—A mother has delusions about the health of her minor son. Here we hold substantial evidence supports the conclusion that the minor is at risk of suffering serious emotional damage.

Alexandra S. appeals from the jurisdictional and dispositional orders declaring her children, Matthew S. and Sarah S., to be dependents of the juvenile court.[1]

Substantial evidence supports the jurisdictional order as to Matthew S. We affirm.

### FACTS

Alexandra S. had these delusions: her son's penis had been mutilated, he was being treated at UCLA while she was on a trip to South America, she murdered the treating physician when she returned to find her son in a "septic state" at the hospital. Acting on these delusions, she took her 13-year-old son to a urologist, Doctor Michael deWit Clayton, for an examination on September 2, 1994. He found no evidence of injury whatsoever to her son's penis, and her son stated he had no such injury. Alexandra S. admitted that she needs help with her psychiatric problems, but that she had trouble finding such help at the time. Although Doctor Clayton did not believe that Matthew S. was in danger of mistreatment, he contacted mental health services to investigate the matter. Doctor Clayton expressed concern whether her children were in good condition and what effect her delusions might have on them.

As a result of Doctor Clayton's referral, the Department of Social Services for the County of San Luis Obispo (the Department) interviewed the children and Alexandra S. Matthew S. did not want to discuss the urological examination at the time. He said that his mother makes confusing statements. For example, his mother says she was married to Gregory Harrison (the actor) who was murdered by the Mafia. When Alexandra S. was told that Mr. Harrison is alive, she suggested that his murder and funeral were staged. Sarah S., then 16, also reported her mother's delusions regarding Harrison. Sarah S. said that her mother tried to pull Matthew S.'s pants down to make sure his genitals were healthy. Alexandra S. also has an adult daughter, Lana. The previous year, Alexandra S. tried to touch Lana's breasts to show her how to massage them to stay healthy.

---

[1]On July 19, 1995, subsequent to the orders from which this appeal is taken, the juvenile court ordered that the petition be dismissed as to Sarah S. The dismissal renders moot the appeal as to Sarah S.

Alexandra S. said that Matthew S. complained that his penis was hurting, that she took him into the bathroom, pulled down his pants, saw a plastic bag wrapped around his mutilated penis and took him to UCLA to repair the damage. She disagreed with Doctor Clayton's diagnosis and felt she could disprove him by observing her son's penis.

Alexandra S. and her ex-husband, Wesley S., were divorced years ago due to increasing emotional distance between them. Wesley S. lives and works in Brazil and is erratic about sending child and spousal support of $900 per month. He does not want custody of the children, and he realizes that the children prefer to live with their mother. Until shortly before the instant hearing, Alexandra S. worked as a dietitian at a hospital. She was fired because she refused to undergo therapy when she revealed that she had been molested as a child.

The Department temporarily placed the minor children in protective custody with distant relatives on October 5, 1994. On October 7, 1994, the Department filed dependency petitions on behalf of Matthew S. and his 16-year-old sister, Sarah S. (Welf. & Inst. Code, § 300.)[2] The children were permitted to return to their mother's home on October 11, 1994.

The petitions allege that there is a substantial risk that the children will suffer serious physical harm as a result of the mother's failure or inability to adequately supervise or protect them or to provide them with adequate food, clothing, shelter or medical treatment due to their mother's serious emotional problems. (§ 300, subd. (b).)

The petitions also alleged that Matthew S. is suffering or is at substantial risk of suffering serious emotional damage as evidenced by severe anxiety, depression or withdrawal which is the result of being included in his mother's delusional discussions about his genitals. (§ 300, subd. (c).) The petitions alleged that his mother's emotional problems and behavior placed him at grave risk of sexual abuse. (§ 300, subd. (d).)

Lastly, the petitions alleged that the children have been left without any provision for support in that their father is employed in Brazil and Alexandra S. has primary physical custody. (§ 300, subd. (g).)

The initial report of the investigating social worker, Lance Hillsinger, concluded there is no reason to remove the children from the mother's home at this time, but he recommended court intervention to monitor whether she might commit "physical acts on her beliefs." Hillsinger, however, did not

[2]All further statutory reference is to the Welfare and Institutions Code.

think that Alexandra S. would be violent in the near future. He saw evidence that the mother's "peculiar beliefs are starting to crumble." Alexandra S. understands that others view her as delusional, and she admits she may be delusional. Alexandra S. is aware that she suffers from multiple personality disorders and she has participated in extensive therapy. Although she used to drink, she no longer does so. She does not feel she is any threat to her children and she believes she should not be permitted to parent them if she were a danger to them.

Sarah S. and Matthew S. "have a good, warm relationship, a close, loving relationship that would be the envy of many mothers with teenage children." Neither Sarah S. nor Matthew S. was afraid of their mother and both recognized that what she says is just talk. The children have had no concerns that she would become violent, and they wanted to remain in their mother's well-kept, three-bedroom home. They were happy to be back in their mother's care and she did not discuss her delusions after they returned home. Matthew S. is a good student who stated that he can concentrate better on his school work when he is home with his mother.

Doctor Beryl Davis conducted psychological evaluations which she submitted to the court on November 22, 1994. Doctor Davis described Sarah S. as an attractive, healthy-appearing young woman who offered information in a helpful manner. Sarah S. discussed her mother's delusions, but said she has never felt that her mother was a threat to her or to Matthew S. She denied saying that her mother tried to pull down Matthew S.'s pants. Sarah S. said she has a close relationship with her mother and can tell her anything. Aside from her mother's delusions, her mother deals with her "in a normal 'mother' way." She is best friends with her brother and is also a good student. She is worried about their reduced financial circumstances, but says that her mother provides meals and helps with her homework. She does not lack food, clothes or shelter.

Doctor Davis concluded that Matthew S. is an attractive, healthy-appearing boy who showed no signs of neglect. He was polite and cooperative, but reticent to discuss his mother's delusions about his genitals. He said his mother never tried to pull his pants down, and he never has felt threatened by her for any reason. He said he felt confused by his mother's delusions, but she has not mentioned them again since they went to the urologist. Discipline in the home consists of "being sent to his room and talking about what has been done wrong." He acknowledged that his grades had briefly dropped during the upheaval brought about by the intervention of the Department with the family, but that his grades are better again and he likes school.

Alexandra S. also was pleasant and neatly dressed. She discussed her delusions with Doctor Davis in a consistent, lucid manner. Her speech was normal, there was no looseness of associations and her eye contact was good. She denied trying to pull down Matthew S.'s pants, and she was satisfied with the urologist's opinion. She takes her children to doctors if any health concerns arise. Alexandra S. stated she was concerned about Matthew S., but agreed that doctors should diagnose him. Alexandra S. told Doctor Davis that Matthew S. had nighttime enuresis in the fourth grade, and the doctor advised her to allow him to bathe himself thereafter. Since that time, she has always honored his privacy. She explained her attempt to massage Lana's breasts by saying she wanted to explain breast self-examination to Lana and that she was concerned about Lana's complaints about numbness in the area.

She admitted that she had been molested as a child and that once she tried to commit suicide as a young teenager. She is neither suicidal nor homicidal now, and when she needs medications she takes them. She recently lost her position as a dietitian at French Hospital because she refused to attend therapy as a condition of employment after she revealed that she had been molested as a child. Her divorce occurred because of religious differences and because "they didn't work hard enough on communicating."

Testing scored by computer revealed that her use of fantasy could result in neglect of people and practical matters. It also showed that she misinterprets and distorts perceptual input more than most people and appears to have a strong need to be dependent. Doctor Davis was concerned about her morbid, violent delusions as expressions of anger, but the children expressed no fear of her and they "appear to be healthy, and reasonably well-adjusted." The children are confused about their mother's delusions, although "[t]hey appear, however, to be able to recognize their mother's delusions and to deal adequately with them." Alexandra S. seeks the help of physicians and follows through with their assistance.

Doctor Davis concluded that Alexandra S. has a rich and complex delusional system which appears to have increased and deepened since her divorce in 1986. She also concluded it would do more harm than good to everyone involved to remove the children from the mother. Nonetheless, she believed the family should be closely supervised to monitor the situation. She recommended that therapy and information sessions be required and that child protective services should remain involved to help them.

Hillsinger's supplemental report dated November 29, 1994, prepared after the Department received Doctor Davis's report, provided a case plan involving such further psychiatric evaluation and therapy, among other things.

Alexandra S. was denied Aid to Families with Dependent Children (AFDC) shortly before the jurisdictional/dispositional hearing of December 28, 1994. On her application she stated she had expensive homes and was married to actor Gregory Harrison.

After the jurisdictional/dispositional hearing, the juvenile court found true by clear and convincing evidence the allegations that Matthew S. is at risk of physical and emotional harm due to his mother's serious emotional problems stemming from her intense delusions with violent themes involving Matthew S. (§ 300, subd. (b).) The court struck, however, the allegation that there is great danger that she will act out her violent delusions. (§ 300, subd. (b).) The court also found true that Matthew S. is at risk of developing severe emotional problems as a result of being included in his mother's delusional discussions. (§ 300, subd. (c).) Lastly, the court found true the allegation there is no provision for support in that Wesley S. is employed in Brazil and the current family order gives primary physical custody to Alexandra S. (§ 300, subd. (g).) The court struck the allegation regarding sexual abuse of Matthew S. (§ 300, subd. (d).)

The court declared Matthew S. to be a dependent of the court and permitted him to reside with his mother under court-ordered family maintenance. Alexandra S. stated that the involvement of child protective services in her life has created more stress than it has alleviated. She resents the intrusion and does not want to comply with a case plan. This appeal ensued from the jurisdictional and dispositional orders.

### DISCUSSION

Alexandra S. asserts that the orders should be reversed because there is no substantial evidence to support them. ■ A juvenile court may order children to be dependents thereof if the Department establishes by a preponderance of the evidence that allegations made pursuant to section 300 are true. (§ 355.) The Department has the burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent. (See *In re Heather P.* (1988) 203 Cal.App.3d 1214, 1228-1229 [250 Cal.Rptr. 468], overruled on other grounds in *In re Richard S.* (1991) 54 Cal.3d 857, 866, fn. 5 [2 Cal.Rptr.2d 2, 819 P.2d 843]; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 540-542 [184 Cal.Rptr. 778].)

Because the Department dismissed the petition as to Sarah S., we are only concerned about whether substantial evidence supports the findings and orders as to Matthew S. The findings and orders concern allegations found

true by the court under section 300, subdivisions (b), (c), and (g). ■ We review the findings and orders under the substantial evidence test. We affirm the rulings of the juvenile court if there is reasonable, credible evidence of solid value to support them. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924 [171 Cal.Rptr. 637, 623 P.2d 198]; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 199 [23 Cal.Rptr.2d 482].)

### *Section 300, subdivision (b)*

■ Under section 300, subdivision (b), the Department had to show *that the minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness,* as a result of the failure or inability of the parent to adequately supervise or protect the minor, or by the willful or negligent failure of the parent to provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent to provide regular care for the minor due to the parent's mental illness or substance abuse. (See generally, *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820-824 [2 Cal.Rptr.2d 429].)

Here, the court struck the allegation that there is great danger that Alexandra S. will act out her violent delusions. Nonetheless, the court found that Matthew S. is at risk of physical and emotional harm due to Alexandra S.'s emotional problems stemming from her violent delusions. The court also found a failure to provide adequate food, clothing and shelter because Alexandra S. did not properly fill out the AFDC application.

There is no evidence that Matthew S. has suffered, or that there is substantial risk that he will suffer, serious physical harm or illness as a result of Alexandra S.'s supervision and protection of him. Neither is there any showing of such harm from failure to provide food, clothing or shelter. Aside from going to the urologist to make sure her son was not harmed after she had a delusion, she is an excellent mother. Matthew S. consistently expressed *no fear of Alexandra S.* for any reason. Neither did his siblings. She has a well-kept home, provides meals to her children and has consistently obtained medical treatment for the children. Her children are healthy, well groomed and attractive. She has voluntarily participated in extensive therapy for herself over the years, too. There is no evidence that she drinks or abuses substances. Doctor Davis and Lance Hillsinger saw no evidence of neglect.

### *Section 300, subdivision (g)*

Under section 300, subdivision (g), the Department had the burden to show that "[t]he minor has been left without any provision for support

. . . ." The court found true the allegation that Wesley S. is employed in Brazil and that Alexandra S. has primary physical custody. The finding does not state or indicate that Matthew S. has been left without any provision for support, and there is no evidence that this is so. Although Alexandra S.'s financial resources are being strained because she recently lost her job, she has been supporting her children for years and continues to do so. She is seeking new employment. There is no evidence of malnutrition, deprivation of shelter, clothes or medical care for Matthew S.

*Section 300, subdivision (c)*

█ Under section 300, subdivision (c), the Department had the burden to show that Matthew S. "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage," as evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior. Here, the court found that Matthew S. is at risk of developing severe emotional problems as a result of Alexandra S.'s delusions about his health. The court concluded that Alexandra S. is "unable to acknowledge this difficulty or to provide Matthew with a stable and non-threatening environment."

Substantial evidence supports the court's finding even though there are notable positive aspects in the home environment. Neither of the children feels threatened by their mother. Matthew S. likes school and is a good student. His grades have improved since he returned to his mother's home, and he appears to be "reasonably well-adjusted." Matthew S. and Sarah S. appear to have a warm close relationship with their mother. This is why the Department recommends the children not be removed from the home.

Although the children have not as yet suffered harm at their mother's hands, substantial evidence points to potential serious emotional harm. It is problematic that Alexandra S.'s delusions could result in some catastrophic event giving rise to a substantial risk that Matthew S. could suffer serious physical harm or illness as the Department postulates. Substantial evidence does, however, point to a substantial risk of emotional harm.

Alexandra S. brings a foreboding sense of dread, danger and catastrophe to the lives of her children. Although Matthew S. so far has been able to deal with his mother's delusions, he is confused by them. As Hillsinger points out, Matthew S. is forced to shoulder a tremendous burden. He has a close loving relationship with his mother, but he "remains silent. He does not speak up for an apology, not out of a fear of retaliation, but out of a fear he will aggravate his mother's emotional problems. This is a lot of self-control

to expect from a thirteen year old." Hillsinger also pointed out that at this time in his life, Matthew S. did not have the capacity "to escape from [his mother's] generalized and overwhelming sense that everybody is in immediate danger from some obscure and threatening force."

As the Department points out, Matthew S. was the most affected by his mother's illness. He suffered the indignity and embarrassment of the medical examination. His reticence to speak about his feelings and his reluctance to obtain assistance is understandable, but it reflects withdrawal and it points to the need for court supervision. Matthew S. has neglected his own emotional needs because of his fear of aggravating his mother's condition. In such a situation there is a substantial risk he could suffer serious emotional damage.

The Department points out that should Alexandra S.'s condition deteriorate, a distinct possibility occasioned by the stress arising from financial pressures, Matthew S. would most likely not seek help.

Despite the doctor's assurance that Matthew S. had not been mutilated, Alexandra S. still believed he had been mutilated and would consequently die. Because of intervention by the court and the Department she has apparently not spoken of these fears to her children since they have been returned to her. The continuing jurisdiction of the court would help ensure that Alexandra S. continue to keep her fears to herself. This in turn would relieve Matthew S. from the burden of his mother's delusions.

Upon our review of the entire record we conclude that substantial evidence supports the juvenile court's finding that Matthew S. is at risk of developing severe emotional problems. (§ 300, subd. (c).) Therefore, we affirm the dispositional order of the juvenile court as to Matthew S. (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 820; *In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].)

We trust the Department will pursue its case plan in an unobtrusive manner and will cause as little disruption to the family as possible. Of course should matters improve so that there is no longer a substantial risk of emotional damage to Matthew S., dismissal of the petition would be appropriate.

Yegan, J., concurred.

STONE (S. J.), P. J.—I dissent. As my colleagues have pointed out, there is no evidence that Matthew S. has suffered, nor is there a substantial risk that he will suffer, serious physical harm or illness as a result of Alexandra S.'s

supervision or protection of him. (Welf. & Inst. Code, § 300, subd. (b).)[1] Neither is there any showing of such harm from willful or negligent failure to provide food, clothing, shelter or medical treatment. (§ 300, subd. (b).) The majority further acknowledges there is no evidence that Matthew S. is without any provision for support. Alexandra S. has supported her children in a well-kept three-bedroom home by obtaining various jobs over the ten years since her divorce, despite erratic payments of child and spousal support by her ex-husband. (§ 300, subd. (g).) Her children are healthy, well groomed, and she has consistently obtained medical care for them over the years. There is no evidence of neglect or of lack of support for Matthew S.

The majority concludes there is substantial evidence to support the finding of the juvenile court that Matthew S. is at risk of developing severe emotional problems in the future as the result of her inclusion of him in her delusions, under section 300, subdivision (c).

But, as the majority states, there is no evidence that any of the children have yet suffered emotional harm at the hands of Alexandra S. The record does not show that the juvenile court has ever taken jurisdiction over any of these children before. One of the children, Lana S., is an adult. Sarah S. is now over 16, and the court dismissed the petition as to her. And Matthew S. was 13 at the time the San Luis Obispo County Department of Social Services (the Department) petitioned the court for jurisdiction over him. Given the record before us today, we have no evidence to prognosticate a strong potential for future severe emotional damage to Matthew S.

The majority states that Alexandra S. brings a sense of dread, danger and catastrophe to the lives of her children through her delusions. This is speculation only. The evidence does not support that conclusion. Doctor Davis observed that Matthew and Sarah S. "express no fear of their mother and appear to be healthy, and reasonably well-adjusted." Doctor Beryl Davis concluded that although Sarah S. and Matthew S. are confused about their mother's delusional status, they both appear to be "able to recognize their mother's delusions and to deal adequately with them." As the majority points out, Hillsinger found that Sarah S. and Matthew S. "have a good, warm relationship, a close, loving relationship that would be the envy of many mothers with teenage children."

The majority suggests that Matthew S.'s understandable reticence to express his feelings to Lance Hillsinger and to Doctor Davis, and his reluctance to obtain assistance from them, establishes the need for judicial dependency. I disagree. Section 300, subdivision (c) requires the Department

---

[1] All further statutory references are to the Welfare and Institutions Code.

to prove that a child is at *substantial risk* of suffering *severe emotional damage* as *evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior* before the juvenile court may assume jurisdiction. (§§ 300, subd. (c), 355.)

By its revision of section 300 to include subdivision (c), the Legislature explained that it wanted " 'to provide more clear-cut guidance to social workers and judges regarding the types of situations which the Legislature considers abusive or neglectful.' " (*In re Alexander K.* (1993) 14 Cal.App.4th 549, 558-559 [18 Cal.Rptr.2d 22].) The new legislation provided definitions which focus on specific harms to a child. (*Id.* at p. 559.) " 'The legislative history thus confirms an unmistakable intention to narrow the grounds on which children may be subjected to juvenile court jurisdiction.' " (*Ibid.*; see also *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820-824 [2 Cal.Rptr.2d 429]; *In re Heather P.* (1988) 203 Cal.App.3d 1214, 1228-1229 [250 Cal.Rptr. 468], overruled on other grounds in *In re Richard S.* (1991) 54 Cal.3d 857, 866, fn. 5 [2 Cal.Rptr.2d 2, 819 P.2d 843].) That Alexandra S. is delusional does not mean that Matthew S. is likely to suffer severe emotional harm. (*In re Heather P., supra,* at pp. 1228-1229; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 540-542 [184 Cal.Rptr. 778].)

Although Doctor Davis found Matthew S. to be shy and uncomfortable in talking to her about his mother's beliefs regarding his genitals, she also stated that he is "polite and cooperative about providing information." We should not conclude that his shyness and protective nature constitute severe anxiety, depression, withdrawal or untoward behavior justifying judicial intervention. Doctor Davis found Matthew S. to be a reasonably well-adjusted teenager.

On this record, it is speculation to predict that some catastrophic event could occur which would create a substantial risk that Matthew S. will suffer serious emotional harm. Where children, as here, do not fall within the descriptions of section 300, the Department may still offer *voluntary* services pursuant to section 300. But, section 300 expressly provides that it is not intended "to disrupt the family unnecessarily or to intrude inappropriately into family life . . . ." (And see *Laurie S.* v. *Superior Court* (1994) 26 Cal.App.4th 195, 199-200 [31 Cal.Rptr.2d 506].)

The Department's intervention has disrupted the family already. Although the orders permit the children to remain with their mother, the case plan and the other orders of the court restrict the family and require it to accede to the intervention of the Department. The case plan requires Alexandra S. to cooperate with announced, as well as unannounced home calls. It also

requires her and her children to participate in therapy, including in-home counseling. Furthermore, it requires Alexandra S. to facilitate telephone contact between her children and their father, who lives in Brazil. The family feels intruded upon by such involvement of the Department in their lives.

Both Matthew S. and Sarah S. have a good, warm, close relationship with Alexandra S. that would be the envy of many mothers. Matthew S. does not exhibit severe anxiety, depression, withdrawal or untoward aggressive behavior. He is a polite, reasonably well-adjusted teenager. Substantial evidence does not support the finding of jurisdiction over Matthew S. and the concomitant intrusion of the Department into the lives of this family. (See *In re Alexander K.*, *supra*, 14 Cal.App.4th at pp. 558-559.)

I would reverse the jurisdictional and dispositional orders and direct the juvenile court to dismiss the instant petition.

**✳ BELOW IS A PASTE-OVER CRACK-AND-PEEL INSERT FOR CORRECTION OF AN ERROR IN THE BOUND VOLUME REPORT OF PEOPLE v. KILBORN (1996) 41 CAL.APP.4TH 1325, AT PAGE 1325, THE SECOND PARAGRAPH OF THE SUMMARY.**

Please remove the correction insert from the peel-off backing and position it to cover the second paragraph of the summary on page 1325.

The Court of Appeal affirmed. The court held that defendant was not denied due process of law, based on the argument that the three strikes sentencing scheme metes out greater punishment to those whose crimes are of diminishing severity, and lesser punishment to those whose crimes are of increasing seriousness. It held that it is not irrational to provide that the more serious the previous crime, the greater should be the punishment for a subsequent offense. The wisdom of the legislative choice is not subject to judicial review, so long as it is rational. The court further held that the system of imposing greater punishment on all persons who commit felony-grade crimes after having committed one or more serious or violent felonies in the past is rationally related to the legitimate public objective of discouraging recidivism, and did not deny defendant equal protection. The court also held that the provision of the three strikes initiative (Pen. Code, § 1170.12, subd. (d)(1), (2)) requiring the prosecutor to plead and prove all prior serious and violent felony convictions does not violate the constitutional principle of separation of powers (Cal. Const., art. III, § 3). (Opinion by Epstein, Acting P. J., with Hastings, J., and Rubin, J.,* concurring.)