Filed 12/02/24  P. v. Bertao CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRYCE BERTAO,<br><br>    Defendant and Appellant. | H051404<br>(Santa Cruz County<br>Super. Ct. No. 21CR05487) |

In April 2023, defendant Bryce Bertao pled no contest to charges of reckless driving and driving under the influence of alcohol.  The trial court sentenced Bertao to three years in state prison, suspended execution of the sentence and placed Bertao on formal probation for three years on various conditions, including a requirement that he serve 364 days in county jail.  The trial court permitted Bertao to serve his jail sentence on home detention with electronic monitoring.

Bertao subsequently enrolled in a privately-run electronic home monitoring program after he was found ineligible for the county's authorized home detention program.  Bertao then requested that he be awarded conduct credits pursuant to Penal Code § 4019[1], which authorizes credits for participation in home detention programs under section 1203.016.[2]  In September 2023, the court denied Bertao's request.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Section 1203.016, subdivision (b) provides in pertinent part: "As a condition of participation in the home detention program, the inmate shall give consent in writing to (continued)

Bertao now appeals the court's order denying him conduct credits, arguing that the private program he participated in fell within the provisions of section 4019, and that denying him conduct credits for participation in this program violates equal protection. He further argues that the court miscalculated the total amount of credits he had earned in custody and on the home detention program.

For the reasons explained below, we find that Bertao's actual credits were miscalculated and direct the court to modify them in the abstract of judgment. In all other respects, we find no error in the court's order denying Bertao conduct credits and affirm.

## I. PROCEDURAL BACKGROUND[3]

### A. Charges and Original Sentence

On December 3, 2021, the Santa Cruz County District Attorney's Office filed a complaint charging Bertao with one felony count of evading an officer with willful disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a), count 1),

participate in the home detention program and shall in writing agree to comply . . . with the rules and regulations of the program, including, but not limited to, the following rules: [¶] (1) The participant shall remain within the interior premises of the participant's residence during the hours designated by the correctional administrator. [¶] (2) The participant shall admit any probation officer or other peace officer designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention. [¶] (3) The participant shall agree to the use of electronic monitoring . . . for the purpose of helping to verify compliance with the rules and regulations of the home detention program. . . . [¶] (4) The participant shall agree that the correctional administrator in charge of the county correctional facility from which the participant was released may, without further order of the court, immediately retake the person into custody to serve the balance of the person's sentence if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, or if the person for any other reason no longer meets the established criteria under this section. . . ."

[3] As the facts of Bertao's underlying offense are irrelevant to the issue on appeal, we do not recount them here.

one misdemeanor count of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a), count 2), and one misdemeanor count of driving without a license (Veh. Code, § 12500, subd. (a), count 3). The complaint also alleged that in the commission of driving under the influence, Bertao refused to take a chemical test. (Veh. Code, § 23578.) The complaint further alleged that Bertao had previously been convicted of robbery (§ 211), which constituted a serious or violent felony pursuant to sections 667, subdivisions (b) through (i) and 1170.12.

On August 3, 2022, Bertao entered an open plea of no contest to evading an officer and driving under the influence of alcohol with a blood alcohol content in excess of 0.08 percent[4], and admitted his prior strike.

On April 10, 2023, the trial court heard argument on Bertao's *Romero*[5] motion to strike his prior offense, and granted the motion over the People's objection. In granting the request, the trial court noted that Bertao's current offense was not a serious or violent felony, that he was currently employed and engaged in Alcoholics Anonymous (AA) meetings, and that he had committed the prior strike offense when he was under the age of 21. The trial court also amended the complaint on its own motion to add two factors in aggravation that Bertao had served a prior prison term and was on parole at the time he committed the instant offense. Bertao admitted to the truth of these aggravating factors, and also entered a plea of no contest to the misdemeanor charge of driving without a valid license. The trial court subsequently sentenced Bertao to the upper term of three years in state prison for evading a police officer (count 1); a concurrent term of 90 days for driving under the influence of alcohol with a blood alcohol content in excess of 0.08 percent (count 3); and a concurrent term of 30 days for driving without a valid license

---

[4] Although the record does not contain an amended complaint, the minute orders from Bertao's plea and sentencing reflect an additional charge was later added for driving under the influence of alcohol with a blood alcohol of 0.08 percent or higher (Veh. Code, § 23152, subd. (b)).

[5] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

(count 4).  The trial court suspended execution of Bertao's sentence and granted him formal probation for 36 months with a number of conditions, including serving 364 days in county jail.  The trial court permitted Bertao to serve this time through home detention with electronic monitoring, and authorized his participation in the Custody Alternatives Program (CAPS) operated by the sheriff's office.  However, the court noted that because of his conviction for evading an officer, Bertao would most likely not be eligible for CAPS, and therefore informed Bertao that if he was rejected from CAPS, he would need to seek authority to enroll in an alternative program.  The court further indicated that if Bertao chose to enroll in an alternative program, he would not receive credits for "good time/work time."

On June 2, 2023, the trial court authorized Bertao's participation in a private electronic monitoring program after he did not qualify for CAPS.  Bertao enrolled in Options, a private electronic monitoring program, on June 21, 2023.

### B.  Conduct Credits Proceedings

On August 14, 2023, Bertao filed a motion to modify his sentence and requested conduct credits pursuant to section 4019 for his time served in the Options electronic home monitoring program.  In his request, Bertao argued that the Options program met the minimum requirements for postsentence home confinement, as defined in section 1203.016, and were as "custodial or restraining" as the terms of release for individuals participating in home confinement through CAPS.  He therefore claimed that he was similarly situated to those individuals such that he should be granted the same conduct credits.  He further argued that there was no legitimate government purpose for treating participants in the Options program differently than those in the CAPS program.

Shortly afterward on August 16, 2023, Bertao was terminated from the Options program after being arrested on a new offense on the same day.

On September 1, 2023, the trial court denied Bertao's request for conduct credits from his time in the Options program.  In a written ruling, the trial court found that

private monitoring companies did not fall within the scope of section 1203.016, as they were not law enforcement, nor were they empowered to take someone back into custody should that person not comply with the program rules. The court further held that individuals who could afford Options after being found ineligible for CAPS were not similarly situated to those who qualified for CAPS. The court noted that such individuals had the "financial means" to stay out of custody, "maintain their activities and their lifestyle and serve out their sentence in the reduced time period," while others without such means would have to serve their sentence in jail. Based on this financial inequality, as well as the lack of authority under section 1203.016 for granting conduct credits to Options participants, the court denied Bertao's request.

Bertao timely appealed the September 1, 2023 order.[6]

On October 18, 2023, after Bertao filed his appeal from the September 1, 2023 order, he admitted to violating the terms of his probation based on the filing of two new criminal cases[7] against him. Although the new cases were being dismissed, Bertao entered a *Harvey*[8] waiver permitting the court to consider the dismissed charges as part of sentencing. On October 27, 2023, the trial court terminated probation and imposed a prison term of two years in state prison. In issuing its new sentence, the trial court reiterated that it would not be changing its position regarding conduct credits for the time Bertao served on the Options program. The court indicated that Bertao's total credits amounted to 187 days, which it calculated as follows: (1) 126 days of time served in custody and on Options (five days in jail following his December 2021 arrest, 65 days on the Options program, four days in jail following his August 2023 arrest, and 52 days in

---

[6] As the order denying Bertao's motion was made after entry of judgment, this court has jurisdiction over the appeal under section 1237, subdivision (b).

[7] Santa Clara County Superior Court Case Nos. 23CR03604 and 23CR01082.

[8] *People v. Harvey* (1979) 25 Cal.3d 754 (dismissed charges may not be used to impose sentencing consequences unless the defendant waives that right).

jail from his remand into custody in September 2023 through his sentencing in October 2023); and (2) 61 days of conduct credit, pursuant to section 4019, based on his time served in custody.

## II.    DISCUSSION

### A.    *Mootness of Appeal*

As a threshold matter, the Attorney General contends that Bertao's appeal is moot for two reasons.  First, the Attorney General claims that a close reading of the record demonstrates the trial court "accidentally" awarded Bertao conduct credit for his time in the Options program, despite its indications that it did not intend to do so.  Second, the Attorney General argues that because Bertao's probation period terminated unsuccessfully, and he has "presumably" completed his two year prison sentence, his claim should be procedurally barred as moot as this court cannot grant Bertao any effective relief.

Notwithstanding these arguments, we will reach the merits of Bertao's claims on appeal.  First, as noted by Bertao on reply, the record, specifically the abstract of judgment, clearly demonstrates that Bertao was only awarded section 4019 conduct credits for the 61 days he served in county jail (collectively from his December 2021 arrest, August 2023 arrest, and September 2023 remand), and he was not awarded conduct credit for the 65 days he served on the Options program.  Second, assuming arguendo that Bertao has already completed his prison term, we exercise our discretion to reach the merits of this case because we find the primary issue raised, namely, the ability for defendants to obtain conduct credits for time spent in private electronic home

6

monitoring, is one of continuing public interest that is likely to reoccur in the future. (See *Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 199.)

### B. Denial of Section 4019 Conduct Credits

#### 1. Legal Principles and Standard of Review

" '[S]ection 4019 . . . offer[s] prisoners in local custody the opportunity to earn "conduct credit" against their sentences for good behavior. [Citation.]' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1091 (*Gerson*).) For each four-day period in which a prisoner is confined, one day is deducted from his period of confinement "unless it appears by the record that the prisoner has refused to satisfactorily perform labor" assigned to them. (§ 4019, subd. (b).) In addition, for each such period, an additional day is deducted "unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable . . . regulations" established for the prisoner's confinement. (§ 4019, subd. (c).) Section 4019 applies to prisoners in county jails and a variety of other situations of confinement, (§ 4019, subd. (a)), including prisoners "participat[ing] in a program pursuant to Section 1203.016." (§ 4019, subd. (a)(7).)

Section 1203.016 permits a county board of supervisors to authorize the correctional administrator to offer a home detention program in lieu of confinement in a county jail or other county correctional facility. (§ 1203.016, subd. (a); see also § 1203.016, subd. (g) [defining " 'correctional administrator' "].) Section 1203.016 requires the correctional administrator, with approval of the county board of supervisors, to administer a home detention program pursuant to written contracts (§ 1203.016, subd. (i)(1)), which require the contracting agency, among other things, to comply with applicable state correctional standards, demonstrate financial responsibility, and submit to annual review by the correctional administrator. (§ 1203.016, subds. (i)(3)B)(i), (i)(3)(B)(iii).) In addition, to participate in a home detention program, an individual must consent in writing to comply with the rules and regulations of the program and to allow searches "at any time for purposes of verifying . . . compliance with the conditions of the

detention." (§ 1203.016, subd. (b)(2).) If the peace officer supervising a participant in an authorized home detention program has reasonable cause to believe that the participant is not complying with the rules or conditions of the program, the officer may, without a warrant, "retake the person into custody to complete the remainder of the original sentence." (§ 1203.016, subd. (c).) Finally, "unauthorized departures from the place of home detention," as well as willful failures to return at the prescribed time, are punishable as escapes under section 4532 (§ 1203.016, subd. (f)), which are punishable by a year or more of imprisonment. (§ 4532, subd. (a).)

In the instant matter, Bertao argues that because the issue on appeal involves a constitutional claim regarding equal protection, as well as a matter of statutory interpretation regarding the application of sections 4019 and 1203.016 to private electronic monitoring programs, our review should be de novo. However, the Attorney General argues that because Bertao's request to modify his sentence was, in essence, a request to modify the conditions of his probation, we should review the trial court's order for an abuse of discretion. We agree with Bertao. Because his appeal involves the interpretation of a statutory claim and an alleged equal protection violation, our review must be de novo. (See *People v. Jimenez* (2020) 9 Cal.5th 53, 61 [finding that matters involving statutory interpretation, including the scope of a statutory scheme, is subject to de novo review]; see also *California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208 [equal protection claims are reviewed de novo].)

### 2. *Analysis*

#### a. *Application of Section 4019 and Section 1203.016 to Private Electronic Monitoring Programs*

Bertao claims that the trial court erroneously "read a disqualifying factor into the statute that the Legislature did not include and did not intend." He argues that the plain terms of section 4019 only refers to home detention programs administered pursuant to section 1203.016, with no language stating that such a program be administered by a

county sheriff. He further contends that "there [is] no dispute" that he served his home detention under restrictions similar to those he would have served if eligible for CAPS, thus suggesting that the Options program should be found to satisfy the requirements of section 1203.016.

We find no merit to this contention. As discussed above, section 1203.016 contains numerous requirements for a program to satisfy its requirements, many of which are not satisfied by Options. For example, while section 1203.016 allows for correctional administrators to engage with private agencies or entities to provide home detention services, the record does not demonstrate, and Bertao does not argue, that a written contract exists between Options and the Santa Cruz County correctional administrator, as expressly required under section 1203.016, subdivision (i)(1). In addition, while Bertao notes that a participant must agree in writing that Options personnel may enter a participant's residence to inspect and retrieve equipment, he provides no indication that this authorizes Options personnel or law enforcement to enter a residence to verify compliance with the program's terms and conditions. In contrast, as Bertao himself indicated in his motion for modification, the CAPS program requires participants to sign an agreement permitting the personnel from the sheriff's office to periodically check up on the participant at home or possibly at his or her workplace to verify compliance. Lastly, while the Options program provides that it will notify the court, probation, and attorney of any noncompliance with its terms or GPS violations, nothing in the program subjects participants to immediate imprisonment or additional sentencing for failure to comply with its terms and conditions, as required under section 1203.016, subdivision (c). Given these significant differences, we cannot agree that the plain language of section 4019, which specifically refers to home detention programs administered pursuant to section 1203.016, extends to the Options program.

9

### b. *Equal Protection Claim*

Both the California and federal Constitutions "extend to persons the equal protection of law." (*People v. Chatman* (2018) 4 Cal.5th 277, 287; see U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) "[W]hen a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' " (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) Further, "[t]he underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' " [Citation.] (*Id.* at p. 852.) " '[U]ntil the challenger shows that no rational basis for the unequal treatment is reasonably conceivable,' " a statutory classification must be presumed valid. (*Ibid.*)

In arguing a violation of equal protection by treating Options participants differently from CAPS participants for purposes of section 4019 conduct credits, Bertao relies primarily on the case of *Gerson, supra,* 80 Cal.App.5th 1067. In *Gerson*, the appellate court found that a defendant participating in a pretrial home detention program not within the scope of section 1203.018 – which extends the same conditions and privileges of section 1203.016 to a home detention program prior to sentencing, was still entitled to section 4019 conduct credits for two primary reasons. (*Gerson,* at pp. 1088-1090.) First, the *Gerson* court noted that the defendant was similarly situated to participants in an authorized section 1203.018 program because the terms of his home detention were at least as "custodial, or restraining" as a statutory home detention program pursuant to section 1203.018. (*Gerson,* at pp. 1089-1090.) Second, the court found no rational basis for treating defendants like Gerson differently from participants in an authorized program for purposes of receiving conduct credits, particularly given that both "categories of individuals are subjected to similarly restrictive home detention conditions and both are avoiding spending time in jail or other local custody." (*Id.* at

10

p. 1091.)  Accordingly, Bertao argues that because the restrictions in the Options program were the same as the restrictions in CAPS, he should be treated as similarly situated to participants in an authorized section 1203.016 program, and no rational basis exists for treating him differently than such participants.

We find *Gerson* to be both factually and legally inapposite to the case at hand. First, unlike the two programs at issue in *Gerson*, which the court found to be equally restrictive in their terms and conditions, the Options program, for the reasons described above, is not as restrictive as the CAPS program, particularly with the lack of terms in the Options program for verifying compliance and retaking a participant into custody for violations.  Second, the California Supreme Court recently held in the cases of *Hardin, supra,* 15 Cal.5th 834, and *People v. Burgos* (2024) 16 Cal.5th 1 (*Burgos*) that an equal protection challenge no longer requires the court "to ask at the threshold whether the two groups are similarly situated for purposes of the law in question.  The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin,* at pp. 850-851; accord, *Burgos,* at p. 29.)  Accordingly, we need not decide if participants in the Options program are similarly situated to participants in the CAPS program for purposes of assessing Bertao's alleged equal protection violation.  Instead, we only need to determine whether " 'the classification drawn by the statute is rationally related to a legitimate state interest. [Citations.]' " (*Hardin*, at p. 847; accord, *Burgos*, at p. 29.)

In reviewing both programs, we find there is a rational basis for treating defendants participating in a home detention program authorized under section 1203.016, such as CAPS, differently from programs like Options that are not authorized, for purposes of determining whether section 4019 conduct credits should apply.  As noted above, section 4019 gives prisoners credits "unless it appears by the record" that the prisoner has refused either to perform labor assigned to the prisoner or comply with relevant rules and regulations.  (§ 4019, subd. (b) [labor assignments]; *id.* subd. (c) [rules

and regulations].)  These conduct credits "encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities.  [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 317.)  Accordingly, it would be reasonable to award such credits to individuals participating in an authorized home detention program where they must allow peace officers into their residence "at any time for purposes of verifying the participant's compliance with the conditions of the detention." (§ 1203.016, subd. (b)(2).)  Moreover, the combination of: (1) the threat that such inspections may take place at any time; (2) officers' authority to "retake . . . into custody" any participant that the officer has reasonable cause to believe is not complying with the program's rules and conditions (§ 1203.016, subd. (c)); and (3) the correctional administrator's ability to treat unauthorized departures from home detention as an escape that is punishable under the terms of section 4532 (§ 1203.016, subd. (f)), collectively provides participants with a significant incentive to comply with the program's terms.

In contrast, the Options program does not provide the same incentives for compliance, nor does it contain the same guarantees for law enforcement and program administrators to ensure compliance and address violations.  Because the program only requires participants to allow Options personnel to enter their residence to inspect or retrieve equipment, it lacks reliable means for personnel or law enforcement to routinely confirm compliance with the program's terms and conditions.  In addition, the Options program does not require an agreement from participants that they will be removed from the program and returned to custody if they are not complying with program terms and conditions.  Moreover, Bertao provides no indication that any unauthorized departures from the participant's designated residence would be deemed as an escape punishable by imprisonment under section 4532.  In fact, the Options program terms indicate otherwise, as they merely state that any incidents of non-compliance or GPS violations are to be reported to the court, probation, and attorney, with no provisions for immediate

12

consequences or a timeline for reporting such violations.  As a result, Options does not provide the same incentives for participants to comply with the program's terms and conditions as a program authorized under section 1203.016.  We see a clear rationale in providing conduct credits only for authorized programs where participants are required to follow statutorily circumscribed rules for supervision and who risk an immediate return to custody along with the possibility of an additional charge of escape for failing to comply.

In conclusion, section 1203.016's requirements provide greater assurances that participants in such programs are complying with the terms and conditions of those programs, which are not similarly guaranteed under the terms of private electronic monitoring programs. Because we conclude that the classification drawn by the statute is rationally related to a legitimate state interest, we find no equal protection violation in the denial of section 4019 credits to participants in home detention programs – such as Options - not subject to the requirements of section 1203.016.

### C. *Miscalculation of Custody Credits*

Bertao finally contends that his final credit calculation failed to include 19 actual credits that he earned on two separate occasions as follows: (1) three days of credits while he was in custody on a bench warrant issued in error pending his enrollment in Options; and (2) 16 days of credits between August 22, 2023, and September 6, 2023, after he allegedly reenrolled in Options following his August 16, 2023 arrest.  The Attorney General did not respond to Bertao's claim.

As a preliminary matter, we note that Bertao's instant appeal is not from the court's October 27, 2023 order calculating his total credits, but from the September 1, 2023 order denying him section 4019 credits for his time served in the Options program. With that said, an error in the calculation of credits at sentencing is considered a judicial error that "is subject to correction whenever brought to the attention of a court that has

13

jurisdiction." (*People v. Boyd* (2024) 103 Cal.App.5th 56, 65.) Accordingly, we shall reach the merits of Bertao's claim.

"Everyone sentenced to prison for criminal conduct is entitled to credit against his term for all actual days of confinement solely attributable to the same conduct." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30 citing §§ 2900, subd. (c), 2900.1, 2900.5, subds. (a), (b).) In the instant matter, the trial court awarded Bertao 126 days of actual credit consistent with the calculations prepared by the probation department.[9] However, in reviewing the record, we agree with Bertao that these credits were miscalculated. On June 2, 2023, the trial court indicated it would award Bertao three days of credit for his time spent in custody on the bench warrant issued in error pending his enrollment in Options, which is also reflected in the minute order from that hearing. Accordingly, those days should have been included in the calculation of Bertao's credits earned in custody, as well as the calculation of conduct credits.

Conversely, the record does not conclusively demonstrate that Bertao should be entitled to 16 days in credits for time served in Options between August 22, 2023, and September 6, 2023. While Bertao's trial counsel indicated that Bertao had reenroll in Options after being arrested on new charges on August 16, 2023 and released on bail, the letter provided only confirms that Bertao was accepted back into Options on August 22, 2023. The letter does not confirm that Bertao was actively enrolled or participating in the program, and we find no other proof in the record to this effect. Without such proof, we cannot agree that Bertao should receive additional credit for the time period requested.

We therefore conclude that Bertao should have received an additional three days of actual credits.

---

[9] The calculations from the probation report are quoted by Bertao in both his opening and reply briefs.

### III.    DISPOSITION

The judgment is modified to award Bertao three additional days in actual credits and three additional days in conduct credits.  The trial court is directed to prepare an amended abstract of judgment to reflect a total of 129 days of actual credits and 64 days of local conduct credits, for a total of 193 days.  The court shall forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.  In all other respects, the trial court's order denying conduct credits is affirmed.

_____
Wilson, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Danner, J.




People v. Bertao
H051404