Filed 9/25/15  In re Kevin C. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re KEVIN C. et al., Persons Coming Under the Juvenile Court Law. | B260212 (Los Angeles County Super. Ct. No. CK63851) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ADRIANA S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## SUMMARY

Adriana S. (Mother) appeals from the juvenile court's dispositional order requiring her to participate in a psychological and psychiatric evaluation.[1]  Mother contends this order constituted an abuse of discretion because the juvenile court had previously dismissed the allegation in the petition that Mother had mental and emotional problems that rendered her unable to parent.  Mother also argues that this order constituted an abuse of discretion because it was unfunded and Mother had stated that she could not afford additional services.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2014, the Los Angeles County Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300 petition (Petition) on behalf of Kevin, Adrian, J., Angel and D., who were at the time seventeen, fifteen, fourteen, seven and almost one-year-old, respectively.  In addition to alleging in count b-5 that Mother had mental and emotional problems, including depression, rendering her unable to parent, the Petition alleged that:  on a prior occasion, Mother duct taped Angel's mouth, hands and feet as a form of discipline; Mother and Father failed to ensure the children continuously participated in mental health services as recommended by mental health professionals; and Mother and Father were unable to properly parent J., who had mental, emotional and substance abuse problems.[2]

In the Detention Report filed on June 13, 2014, DCFS reported that the family had been under a voluntary family maintenance plan for over a year, since April 2013, when DCFS received a call alleging that Mother had attacked Father—who allegedly had a history of committing domestic violence against Mother—with a broom and threw a book at J., leaving a bruise on her shoulder.  The caller also alleged Mother had mental health

---

[1] Marcos C. (Father) is not a party to the appeal.

[2] The Petition also alleged that Mother failed to follow through with services for Angel's learning disability with his school but this allegation was dismissed.

issues and was diagnosed with a personality disorder, and that Mother called J. names and sent her to bed hungry when Mother was angry.

During the period of voluntary DCFS supervision, Mother expressed feelings of "frustration, depression and feeling overwhelmed, as father is not supportive, works all the time, thus mother lacks support, lack[s] parenting skills and has a lot [of] financial issues. Mother admits that she yells at the children and her family is in need of more help from DCFS, as the children continue to be rebellious, defiant and yell back. Mother's parenting skills have been ineffective, and mother reports that father does not play a role in parenting."

As part of the voluntary family maintenance plan, Mother agreed to couples counseling with Father, individual counseling and a ban on physical discipline. In May 2013, Mother received an Up-Front Assessment and it was recommended that she "enroll in individual counseling[] to address her depression and stress," and domestic violence issues.[3] The assessment also recommended parenting classes, family therapy, couples therapy, and individual counseling for all of the children based on the Mother's description of the severity of their behavioral problems.

Mother and family initiated some of the recommended therapy and counseling but did not follow through with a number of appointments and sessions, including missing at home therapy sessions for the entire family, Mother enrolling in and then dropping a parenting class to switch providers, and then later dropping the class at the second provider, stating she did not have the money to pay for each class, Mother not attending conjoint therapy with J. because Mother did not like the paternal aunt at whose home the therapy was scheduled, and Mother not taking Kevin, Adrian and Angel to intake appointments for individual counseling.

---

[3] Up-Front Assessments are performed by family preservation agencies at the request of DCFS and use a standardized assessment tool to evaluate caretaker capacity. The assessors are clinicians (or under the supervision of a clinician) who address questions related to mental health, substance abuse and domestic violence. (See http://lacdcfs.org/reunitingfamilies/docs/Up-Front%20Assessments%20(UFA)%20Info%20list.pdf (as of June 23, 2014).)

In May 2014, the month before the Petition and Detention Report were filed, a social worker met with Mother informing her that family preservation services had reported to DCFS that Mother had bound Angel's hands, feet, and mouth with duct tape. Mother stated she was trying to protect Angel from harm. Mother also stated that she did not have money to pay for more services and that DCFS was not helping her family.

According to the Detention Report, the family had four prior referrals, one of which was substantiated. The substantiated incident occurred in 2006 and involved Mother inflicting a "non-accidental serious physical harm" on J. by burning J. (then five years old) with a hot spoon resulting in "second-degree burns on her lower lip with healing burns on her chin, cheek and cheekbone" and then failing to seek medical treatment for J. The family denied any current domestic violence.

In an Addendum Report filed on June 17, 2014, DCFS recommended that Mother "[s]ubmit to a psychological/psychiatric evaluation with follow-up treatment as recommended."

In a August 7, 2014 Jurisdiction/Disposition Report, DCFS reported the following with respect to count b-5 alleging that Mother has mental and emotional problems: Mother stated the allegation was not true and that she did not know "where that came from" but she did not have a diagnosis or any symptoms of depression. Kevin and Adrian likewise stated that the allegation was not true, both describing Mother as a happy person and stating that they had never seen her sad or crying. Kevin also stated that Mother was a good mother and able to do everything mothers do, like cook and clean for the family. J. stated that the allegation was true and that Mother "gets really stressed out with us" and is "always crying about her kids." J. stated that she thought Mother needed "counseling or to talk to someone about all the drama in the house." Angel stated that Mother did cry a lot but he did not know why she cried. He stated that he hugs her very tight, brings her water to help her relax, and tells her "if we pray together everything is going to be ok." Father stated that he did not know if Mother was "depressed or what is going on exactly," but admitted that Mother cried a lot because the children were "out of

control." Father, however, thought it was "normal for people to get stressed out and worry about things."

DCFS also reported that Mother was born in Mexico and as a child, she witnessed severe domestic violence, physical abuse, and alcoholism by her father and sexual abuse by other family members. She had been with Father for 18 years, married for the past two years, and stated that their domestic violence issues have been resolved since their last DCFS case.

The Jurisdiction/Disposition Report recommended Mother participate in a DCFS approved counseling to address case issues, Mother and Father to participate in family counseling with the children, and Mother and Father to participate in a DCFS approved parent education class.

On October 22, 2014, the petition was adjudicated. At the hearing, Mother waived her right to trial and submitted the matter based on the social worker's reports and agreed upon language, except as to count b-5. Counsel for J. requested the juvenile court dismiss count b-5, arguing that although J. stated that Mother does cry, counsel did not believe "there is a nexus in terms of the Mother's occasional crying because of the problems that are going on with the home with regard to the physical well being of the children. Oftentimes we do see that crying is a normal reaction of problems going on. It does not necessarily mean that it rises to a level of [subdivision] (b) in the [section] 300 petition." Counsel for Mother asked for count b-5 to be dismissed for the reasons stated by J.'s counsel and argued that DCFS had not met its burden. Mother's counsel contended that although Mother cried, "there has not been proven that she has a diagnosis or that crying a lot could lead into physical harm to the children" and that it was a "speculative risk at this point."

After argument by DCFS, the juvenile court dismissed count b-5, explaining "[t]he court's view is [that] there is a difference between being depressed and depression or getting overwhelmed. . . . The court's view is that [DCFS] needs to show more, that there is a correlation between her mental health issues and her parenting, although she needs assistance, there are other counts that reflect that." The juvenile court then

sustained as amended the other counts of the Petition[4] and, after removing Kevin—who was no longer a minor—from the Petition, declared the rest of the children to be dependents of the court.

The court then proceeded to disposition at the same hearing. In the case plan, DCFS recommended, inter alia, ordering Mother to attend mental health counseling, including psychological assessment, psychiatric evaluation, and take all prescribed psychotropic medications. Mother objected to DCFS's request for "psychological evaluation," but did not give further argument. The juvenile court ordered Mother to "submit to a psychological assessment, psychiatric evaluation and take all psychotropic meds, if ordered." The court ordered J. removed from the home and the other children placed with the parents.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends on appeal that the juvenile court abused its discretion when it ordered her to participate in a psychological assessment and psychiatric evaluation, and also by making this unfunded order, despite Mother's financial difficulties. We disagree and affirm.[5]

Under Welfare and Institutions Code section 362, subdivision (a), when a child is adjudicated a dependent of the juvenile court, "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." Subdivision (c) provides that when a parent retains custody of a dependent

_____

[4] As noted previously, the court dismissed the count alleging Mother failed to follow through with services for Angel's learning disabilities with his school.

[5] We decline DCFS's suggestion that we treat as forfeited Mother's objection to the psychological assessment and psychiatric evaluation. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1292.) Mother's counsel had earlier in the hearing argued to dismiss the allegation of mental and emotional problems and, although counsel did not reiterate these arguments with respect to the DCFS recommendation, the court was necessarily aware of them.

6

child, "the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." Subdivision (d) in turn provides that the juvenile court "may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section. . . ." Subdivision (d) further provides, "[t]hat order may include a direction to participate in a counseling or education program" and that "[t]he program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.) Moreover, the problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

We find no abuse of discretion in requiring Mother to undergo a psychiatric evaluation or psychological assessment. Here, Mother's Up-Front Assessment provider recommended individual counseling to address Mother's depression, stress, and domestic violence issues in May 2013. Moreover, the DCFS social worker reported that during the period of voluntary DCFS supervision, Mother "expressed feelings of frustration, depression and feeling overwhelmed," and other family members reported that Mother cried often.[6] While the juvenile court concluded that DCFS did not meet its burden to

---

[6] Thus, this case is distinguishable from *In re Basilio T.* (1992) 4 Cal.App.4th 155, relied upon by Mother. In *In re Basilio T.*, two siblings were declared dependants based on domestic violence between mother and father. (*Id.* at p. 160.) The juvenile court ordered substance abuse components to the reunification plan based on mother's unusual

7

establish that Mother had mental and emotional problems which endangered the children as alleged in count b-5, the alleged depression, if it exists, poses a potential risk of interfering with Mother's ability to reunify with J. and to benefit from the reunification services offered as well as the maintenance services offered with the other children. After a finding that the children are at risk from parental conduct, a parent's privacy and liberty interests yield to the demonstrated need to protect the child. (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 199-202 ["psychological evaluations of parents are frequently used in dependency cases" and "psychological evaluation is an 'information-gathering tool'"].) A parent may be ordered to undergo an evaluation to determine whether the parent is mentally disabled and whether reunification services are likely to prevent continued abuse and neglect. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 560.) Thus, "when the court is aware of other deficiencies that impede the parent's ability to reunify with [her] child, the court may address them in the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.) We conclude the juvenile court did not abuse its discretion by ordering Mother to submit to a psychological assessment and psychiatric evaluation.

Finally, we decline to consider Mother's argument raised for the first time on appeal that she is unable to pay for a psychological assessment or psychiatric evaluation. These concerns, including the availability and propriety of low-cost or no-cost referrals, are matters properly for the juvenile court to consider in the first instance.

---

behavior and obsession with a money-making invention but the Court of Appeal noted that mother's counsel showed that there was in fact an invention with money-making potential and her behavior itself did not support "a conclusion [that] she had a substance abuse problem." (*Id.* at pp. 172-173.)

## DISPOSITION

The juvenile court's disposition order is affirmed.

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

LUI, J.

MOOR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9