Filed 6/23/21 In re Alyssa G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ALYSSA G., A Person Coming Under the Juvenile Court Law. | B306721 |
| | (Los Angeles County Super. Ct. No. 20CCJP03419) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CAROLINA G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Carolina G. appeals from the juvenile court's disposition order removing her 16-year-old daughter Alyssa G. from her custody. Carolina contends substantial evidence did not support the court's finding under Welfare and Institutions Code section 361, subdivision (c)(1),[1] that there were no reasonable means to protect Alyssa other than removal. Carolina also contends the juvenile court erred by failing to state the facts supporting its finding the Los Angeles County Department of Children and Family Services made reasonable efforts to prevent removal and by failing to consider alternatives to removal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Alyssa Runs Away from Home and Reports Abuse; the Department Investigates*

On June 17, 2020 Alyssa ran away from home after Carolina pushed her in the car during an argument. Carolina was "extremely angry" and, while she was driving, hit herself in the face and said to Alyssa, "'You see what you made me do? You make me want to kill myself.'" Alyssa reported the abuse to her father, Derek S., who contacted the Los Angeles County Sheriff's Department, which in turn contacted the Department. Alyssa told a Department social worker she was "tired of the ongoing physical and emotional abuse" by Carolina. Alyssa said Carolina "hits her all the time when angry or upset." Alyssa reported a May 31, 2020 incident where Carolina hit her in the face, near her right eye, causing redness and swelling. Alyssa stated, "'My

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

mother has hit me before.  This time was different.  I did not feel safe.'"  Alyssa also reported that Carolina was "unstable" and "unpredictable" and that Carolina exhibited behavior that caused Alyssa to be "concerned for her safety," such as gluing closed the windows in their home, removing Alyssa's bedroom door, and transferring "thousands of dollars" to Alyssa's bank account and telling her, "'Here is the money in case I have a heart attack or die.'"  Alyssa said Carolina frequently called her derogatory names, such as "'whore,'" "'slut,'" "'disgrace,'" and "'bitch,'" and said she was going to disown Alyssa.  Alyssa told the social worker she "is afraid" of Carolina and "no longer wants to live in her mother's home."

Suzanne G., Alyssa's maternal grandmother, corroborated Alyssa's account of Carolina's abuse.  Suzanne told the social worker she witnessed Carolina hitting Alyssa, and she described a relatively recent incident where Carolina hit Alyssa "several times with a closed fist on different parts of her body."  Suzanne reported that Carolina had also physically and verbally abused her.  Suzanne said Alyssa told her about the incident where Carolina hit her in the face and about the more recent incident where Carolina hit herself in the face while she was driving, later poked herself in the eye, and said she wanted die.  Suzanne told the social worker that there was a history of schizophrenia and bipolar disorder in her family and that she believed Carolina had schizophrenia and was paranoid.  Suzanne said Carolina hears voices of people talking about her, sees "things" that are not there, and gets on the floor and hits her forehead when she is angry or irritated.  Suzanne stated Carolina has said that she was related to the President and that her father, who died more than 20 years ago, was working undercover for the President.

In his interview with the social worker, Derek said Alyssa told him three weeks ago Carolina had hit her in the face.  Derek

did not report the incident because, according to him, when he calls the police, "things turn[ ] against him and he gets arrested." Derek also stated Alyssa told him Carolina "gets physical with her all the time over nothing."

Carolina denied the allegations of physical and emotional abuse. Carolina told the social worker that she has sole legal and physical custody of Alyssa and that she and Alyssa have a "'fantastic relationship.'" Carolina stated Alyssa was merely "'acting up a little bit,'" and Carolina blamed the pandemic for Alyssa's frustrations. Carolina admitted that she had slapped Alyssa two weeks before the interview with the social worker, but explained that she had not allowed Alyssa to go out because "there was a lot of looting going on" with "the protests" and that, when Alyssa "kept taunting her," Carolina "slapped her on the face once." Carolina denied she had any mental illness or experienced auditory or visual hallucinations. She explained she glued "some of the windows" in her home closed to prevent other people, including Derek, from breaking in. Carolina summed up Alyssa's allegations as "'just one disagreement.'"

B.     *The Department Files a Petition Under Section 300, Subdivisions (a) and (b), and the Court Detains Alyssa*

On June 24, 2020 the Department filed a petition under section 300, subdivision (a), alleging Carolina physically abused Alyssa, which endangered Alyssa's physical health and safety and placed her at risk of serious physical harm. The Department also alleged, under section 300, subdivision (b), that Carolina's physical abuse of Alyssa, Derek's failure to protect Alyssa from that abuse, and Carolina's "mental and emotional problems, including paranoia, suicidal ideation, visual hallucinations and auditory hallucinations," endangered Alyssa's physical health

4

and safety and placed her at risk of serious physical harm.[2]  At the detention hearing, Carolina denied the Department's allegations.  The juvenile court detained Alyssa and placed her with Suzanne.  The court ordered the Department to provide Carolina referrals for mental health assessment and treatment.

C.     *The Department Investigates Further*

In a follow-up interview, Alyssa reported Carolina had physically abused her for five years, approximately three times a week.  On one occasion, Carolina pinched Alyssa's nose so hard that "she could not breathe," and on another Carolina yanked Alyssa's ear "'really hard.'"  Alyssa stated her grandmother Suzanne cannot stop Carolina from physically abusing her because Carolina also physically abuses Suzanne.  Suzanne has called law enforcement in the past but, according to Alyssa, law enforcement "'does nothing.'"

Carolina told the social worker she did not understand why Alyssa would make these allegations of abuse.  Carolina continued to deny she abused Alyssa and said she slapped Alyssa only once to "'wake her up'" because Alyssa wanted to go out during the protests and looting.  Carolina also said the allegation she had mental illness was "'100% false.'"  Carolina gave the Department a mental health report, prepared shortly after the detention hearing, that stated the assessor did not find evidence "that would suggest [Carolina] has any chronic history of mood disturbance or behavior-related impairments."  The Department

---

[2]     The Department subsequently amended the petition to add a count against Derek under section 300, subdivision (b), alleging that Derek's history of substance abuse and extensive criminal record endangered Alyssa and placed her at risk of serious physical harm.  Derek is not a party to this appeal.

argued the report was based exclusively on Carolina's statements and did not consider any information from the Department, Alyssa, or Suzanne regarding Carolina's "erratic and violent behaviors."

In its report for the jurisdiction and disposition hearing, the Department stated the "case issues that brought the family to the attention of the Court and the Department have yet to be addressed." The Department recommended the court order family reunification services, a psychiatric evaluation under Evidence Code section 730,[3] a parenting program, and individual counseling to address mental health, anger management, and child safety issues.

D.    *The Juvenile Court Asserts Jurisdiction and Removes Alyssa from Carolina*

At the July 16, 2020 combined jurisdiction and disposition hearing, Carolina testified that she completed 26 sessions of a parenting course and that she learned to adapt her discipline methods to what works best for Alyssa. Carolina denied that she

---

[3]    Evidence Code section 730 provides in pertinent part: "When it appears to the court . . . that expert evidence is or may be required by the court or by any party to the action, the court . . . may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action." (See *In re Alexandria P.* (2016) 1 Cal.App.5th 331, 344, fn. 9.) "Frequently after a finding of jurisdiction a parent may be ordered to undergo an evaluation to determine if the parent is mentally disabled and if reunification services are likely to prevent continued abuse and neglect." (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 201.) "The psychological evaluation is an 'information-gathering tool.'" (*Id.* at p. 202.)

6

hit, spit on, or demeaned Alyssa and stated that she only called Alyssa "positives names" like "beautiful" and "honey." Carolina denied she ever hit herself or poked herself in the eye. Carolina did admit she slapped Alyssa once, "not to cause bodily injury or harm," but because Alyssa "started mouthing off" when Carolina caught her sneaking out of the house during the protests. Carolina stated that, in retrospect, "it wasn't the correct way to parent [Alyssa] because she didn't take it well." Carolina explained that "it was [her] attempt at that time to . . . prevent [Alyssa] from going outside." When asked about the allegations of abuse, Carolina declared, "Everything that was written in that detention [report] is fictitious."

The juvenile court found credible Alyssa's statements that Carolina abused her and declared Alyssa a dependent of the court under section 300, subdivision (b).[4] The court concluded it appeared Carolina "may not be fully aware of her own mental health condition and the behavior that that condition has sometimes caused her to engage in." Referring to Carolina's assertion that none of the events alleged in the petition "ever happened" and that Carolina only slapped Alyssa once "due to a concern about her safety," the court stated, "I simply do not find that credible."

For disposition, Carolina argued that Alyssa "thrived" in Carolina's care and that, because Alyssa was "old enough to make reports to law enforcement . . . and social workers, . . . custody won't jeopardize her safety and well-being." Carolina agreed to continue with her parenting program and participate in individual counseling, but objected to the Department's

---

[4] The court did not sustain the allegations in the petition under section 300, subdivision (a), because it did not believe that Carolina "intentionally abused [Alyssa]."

7

recommendation of a psychiatric evaluation under Evidence Code section 730 and to "taking all psychotropic medication."

The court acknowledged Carolina's request that the court release Alyssa to her "with services in place," but found the Department met its burden to prove that removal was necessary to protect Alyssa. The court explained Carolina "simply denies the conduct that has caused this court to take jurisdiction, and it's very difficult to solve a problem unless you recognize that the problem exists. It's hard to see how [Alyssa] could be kept safe from behavior that [Carolina] doesn't admit that she ever engage[d] in, such as physically hitting and saying verbally abusive things to [Alyssa]." The court found that Alyssa was "at serious risk of dangers to her health and well-being" and that "the only way to protect her [was] to remove her from [Carolina's] custody."[5] The court ordered Carolina to submit to a psychiatric evaluation under Evidence Code section 730 and to have her visits with Alyssa monitored. Carolina timely appealed.

## DISCUSSION

### A. *Substantial Evidence Supported the Order Removing Alyssa from Carolina*

#### 1. *Applicable Law and Standard of Review*

"Under section 361, subdivision (c)(1) children may not be removed from their home 'unless the juvenile court finds clear and convincing evidence' of a substantial danger to the children's

---

[5] The court's minute order stated the Department "made reasonable efforts to prevent removal" and that "there [were] no reasonable means by which [Alyssa's] physical health [could] be protected, without removing [her] from the home."

8

physical health, safety, protection, or physical or emotional well-being 'and there are no reasonable means' for protecting the children other than removal from their home.  The statute 'is clear and specific:  Even though children may be dependents of the juvenile court, they shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no "reasonable means" by which the child can be protected without removal.'" (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 809; see § 361, subd. (c)(1); *In re I.R.* (2021) 61 Cal.App.5th 510, 520; *In re V.L.* (2020) 54 Cal.App.5th 147, 154; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1065.)

"'A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.' [Citations.]  It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate.  [Citation.]  'The focus of the statute is on averting harm to the child.'" (*In re D.D.* (2019) 32 Cal.App.5th 985, 996.) "'"The court may consider a parent's past conduct as well as present circumstances."'" (*In re A.F.* (2016) 3 Cal.App.5th 283, 292; see *In re I.R.*, *supra*, 61 Cal.App.5th at p. 520.)

"In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *In re I.R.*, *supra*, 61 Cal.App.5th at pp. 520-521 ['"On appeal from a

dispositional order removing a child from a parent we apply the substantial evidence standard of review, keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.'"]; *In re V.L.*, *supra*, 54 Cal.App.5th at p. 154 ["'"Clear and convincing" evidence requires a finding of high probability.'"].)

"In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012; see *In re G.C.* (2020) 48 Cal.App.5th 257, 265 ["[a]ll evidentiary conflicts are resolved in favor of the respondent"].) "'"We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123.) "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." (*In re I.R.*, *supra*, 61 Cal.App.5th at p. 521, internal quotation marks omitted.)

> 2. *Substantial Evidence Supported the Juvenile Court's Finding There Were No Reasonable Means To Protect Alyssa Other Than Removal*

Carolina contends that "[s]ubstantial evidence does not support the juvenile court's finding there were no reasonable means to protect Alyssa without removing her from [Carolina's] home" because "there were, in fact, reasonable means to prevent removal." Substantial evidence, however, supported the juvenile court's finding that removal was the "only way" to protect Alyssa.

10

The court believed Alyssa's account of the ongoing abuse she suffered from Carolina, and we defer to that credibility determination. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012; see *In re R.T.* (2017) 3 Cal.5th 622, 633 ["'issues of fact and credibility are the province of the trial court'"].) Instead of accepting responsibility for her conduct, Carolina consistently denied she ever hurt Alyssa and attempted to minimize the pervasive abuse she inflicted on her daughter by characterizing it as a one-time slap in the face, purportedly to keep Alyssa safe from protesters and rioters. Carolina's parenting classes also did not appear to have made much of an impact. After 26 sessions, Carolina concluded that slapping Alyssa was not the correct way to parent her because Alyssa "did not take it well," not because her disciplinary method harmed Alyssa.

As the juvenile court found, Carolina's unwillingness or inability to acknowledge she had abused Alyssa for five years left the court with no choice but to remove Alyssa from Carolina's custody to keep her safe.[6] Given Carolina's lack of awareness and remorse, there were no reasonable means other than removal to protect Alyssa. (See *In re Cole C.* (2009) 174 Cal.App.4th 900, 918 ["the evidence supports the court's finding that no reasonable means to protect [the child] were available without removing [him] from [his father's] custody" where the child "would not be safe . . . until [the father] acknowledged the inappropriate nature of his parenting techniques and disciplinary methods"]; see also

[6] Carolina points out she "did at least partially admit wrongdoing; she admitted she hit Alyssa on May 31," 2020. Not really. On May 31, 2020 Carolina hit Alyssa in the face. Carolina admitted to a different incident that Alyssa did not even mention: slapping Alyssa on June 14, 2020. Carolina's blanket denial of "everything" alleged against her undermined any admission of "wrongdoing."

*In re V.L.*, *supra*, 54 Cal.App.5th at pp. 156-157 ["there were no reasonable means to protect [the children] without removal from [their] father's physical custody" because the "inference from [the father's] denial [of domestic violence] is that he is less likely to change his behavior in the future"]; *In re A.F.*, *supra*, 3 Cal.App.5th at p. 293 ["[i]n light of [the] mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home"]; *In re John M.* (2012) 212 Cal.App.4th 1117, 1127 [mother's failure to acknowledge her actions endangered her child supported the juvenile court's finding he could not safely remain in her custody]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; cf. *In re A.E.* (2014) 228 Cal.App.4th 820, 826 ["the risk to [the child] of future abuse [was] low" because her father "expressed remorse and [was] committed to learning better discipline methods"]; *In re Ashly F.*, *supra*, 225 Cal.App.4th at p. 810 [given the mother's expression of remorse and her enrollment in a parenting class, "[a]mple evidence existed of 'reasonable means' to protect [the children] in their home"].)

Carolina argues the assertion of jurisdiction "was, itself, a reasonable alternative to removal." Carolina maintains that, given Alyssa's maturity, she "could call for help in the event of any future physical alternations with [Carolina]." That Alyssa may have had the ability to seek help if Carolina lost her temper again would not protect Alyssa from the first blow. (See *In re Cole C.*, *supra*, 174 Cal.App.4th at p. 918 ["[o]ne of the goals of dependency is to protect a child before harm takes place"]; see also *In re V.L.*, *supra*, 54 Cal.App.5th at pp. 157-158 ["the issue is not whether te minors can report domestic violence after it

happened," but rather "whether there is a risk that they will be injured while any future domestic violence is occurring"].)

Carolina asserts that Alyssa would have been safe under a "plan of strict supervision." As discussed, however, no amount of supervision could have assured Alyssa's safety in Carolina's custody. Carolina had not addressed the underlying issues that placed Alyssa at risk—her inability to accept she had abused Alyssa, her failure to understand why Alyssa would accuse her of abuse, and her refusal to take responsibility for years of wrongful conduct. Thus, for example, a court order prohibiting Carolina from using corporal punishment would not have been effective. As the juvenile court recognized, Alyssa could not be protected from behavior that Carolina denied ever occurred. Unannounced visits to the home from the social worker would have been even less effective; the most recent incident of physical abuse occurred in a car while Carolina was driving. (See *In re A.F.*, *supra*, 3 Cal.App.5th at p. 293 ["[u]nannounced visits can only assess the situation . . . at the time of the visit"].)

### B. *Any Error in the Court's Failure To Comply with Section 361, Subdivision (e), Was Harmless*

Carolina contends the juvenile court erred by failing to state the facts that supported its finding the Department made reasonable efforts to prevent removal. To the extent Carolina did not forfeit this argument by failing to raise it at the disposition hearing,[7] it is meritless.

---

[7] See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court," and "[d]ependency matters are not exempt from this rule"]; *In re*

13

"To aid the court in determining whether 'reasonable means' exist for protecting the children, short of removing them from their home, the California Rules of Court require [the Department] to submit a social study which 'must include' among other things: 'A discussion of the reasonable efforts made to prevent or eliminate removal.'" (*In re Ashly F.*, *supra*, 225 Cal.App.4th at p. 809; see Cal. Rules of Court, rule 5.690(a)(1)(B)(i).)  In turn, the juvenile court must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home. . . .  The court shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e); see *In re V.L.*, *supra*, 54 Cal.App.5th at p. 154; *In re D.P.*, *supra*, 44 Cal.App.5th at p. 1065.)

In its report prepared for the combined jurisdiction and disposition hearing, under the heading "Reasonable Efforts," the Department listed the services it provided in this case: "Emergency Response Services as to the current allegations," referrals for Alyssa to undergo medical and mental health evaluations, family interviews about "the current allegations," and case plan development.  Although the court's minute order stated the Department made "reasonable efforts" to prevent removal, the court did not discuss the facts that supported this finding, such as whether the services the Department provided were effective.  This was error.  (See *In re Ashly F.*, *supra*, 225 Cal.App.4th at p. 810 [juvenile court erred in failing to "'state the facts'" supporting its conclusion the child protective agency

_____

*Daniel B.* (2014) 231 Cal.App.4th 663, 672 [same]; *In re E.A.* (2012) 209 Cal.App.4th 787, 791 [father forfeited his argument the court failed to make an express finding by failing to raise the issue in the juvenile court].

14

made reasonable efforts to prevent and eliminate the need for removal].)

The juvenile court's error, however, was harmless. "[W]hen a juvenile court fails to make the factual findings required under section 361, subdivision (e), its removal order is subject to the constitutional mandate that no judgment shall be set aside 'unless, after an examination of the entire cause, including the evidence, the [appellate] court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citations.] Under this mandate, a 'miscarriage of justice' will be declared only when the appellate court, after examining the entire case, is of the opinion that "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"'" (*In re D.P.*, *supra*, 44 Cal.App.5th at p. 1068; see *In re V.L.*, *supra*, 54 Cal.App.5th at p. 159.)

The Department reasonably provided referrals for Carolina to seek mental health evaluation and treatment, interviewed the relevant people to investigate the veracity and scope of the abuse allegations, and arranged for Carolina to have monitored visitation with Alyssa. (See *In re H.E.* (2008) 169 Cal.App.4th 710, 725 ["reasonable efforts . . . need only be reasonable under the circumstances, not perfect"].) Carolina does not specify what more the Department should have done. Thus, had the juvenile court complied with section 361, subdivision (e), and stated the facts that supported its finding the Department made reasonable efforts to prevent removing Alyssa, it is not reasonably probable the court would have made a contrary finding. (See *In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137 ["[a]lthough the court did not state a factual basis for its removal order, any error is harmless because it is not reasonably probable such findings, if made, would have been in favor of continued parental custody"],

15

disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1219 [had the juvenile court made the findings required under section 361, "it undoubtedly would have made findings adverse to [the father]" because "no reasonable effort could be made by [the agency] to protect [the minor] if he remained in [the father's] custody"]; cf. *In re D.P.*, *supra*, 44 Cal.App.5th at p. 1069 ["it is reasonably probable that, had the juvenile court reflected upon and stated the facts as required under section 361, it would have found [the child] was reasonably protected under the restraining order, and removing him from [his] mother's physical custody was unnecessary to ensure his safe return home"].)

C.     *The Court Did Not Fail To Consider Less Drastic Alternatives to Removing Alyssa*

Carolina asserts the juvenile court failed to consider less drastic alternatives to removing Alyssa from her custody (see *In re Hailey T.* (2012) 212 Cal.App.4th 139, 148; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 171), but the record does not support that assertion. In finding there were no reasonable means to protect Alyssa, the court necessarily considered but rejected Carolina's argument at the hearing Alyssa could remain safe in her custody "with services in place" because she had the maturity to report any further instances of abuse. (See *In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1137.) As discussed, unannounced visits or court orders prohibiting corporal punishment would not have protected Alyssa. The court's comment, "it's hard to see how [Alyssa] could be kept safe," confirms the court considered alternative means to protect Alyssa, but ultimately concluded that any alternative to removal would be insufficient.

16

## DISPOSITION

The disposition order removing Alyssa from Carolina's physical custody is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.